# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, HERRING, and BURTON
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant First Class JASON M. COMMISSO**
**United States Army, Appellant**

ARMY 20140205

8th Theater Sustainment Command
Jeffery D. Lippert, Military Judge (arraignment)
David L. Conn, Military Judge (trial)
Colonel Paul T. Salussolia, Staff Judge Advocate (pretrial)
Colonel Anthony T. Febbo, Staff Judge Advocate (post-trial)

For Appellant:  Major M. Patrick Gordon, JA; Eugene R. Fidell, Esquire (on brief).

For Appellee:  Colonel Mark H. Sydenham, JA; Major John K. Choike, JA; Captain Scott L. Goble, JA (on brief).

29 April 2016

-----------------------------------
MEMORANDUM OPINION
-----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

MULLIGAN, Senior Judge:

An officer panel sitting as a general court-martial, convicted appellant, contrary to his pleas, of one specification of violation of a lawful general regulation, one specification of making a false official statement, two specifications of abusive sexual contact, one specification of indecent viewing of a person's private area, one specification of indecent recording of a person's private area, one specification of wrongful distribution of a recording of a person's private area, and one specification of obstruction of justice in violation of Articles 92, 107, 120, 120c, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 907, 920, 920c, 934 (2012) [hereinafter UCMJ].  The panel sentenced appellant to a bad-conduct discharge, confinement for one year, forfeiture of all pay and allowances, and reduction to the grade of E-1.  The convening authority approved the sentence as adjudged.

COMMISSO — ARMY 20140205

This case is before this court for review under Article 66, UCMJ. Appellant raises seven assignments of error, two of which merit discussion and relief. Appellant also personally raises several additional matters pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1983), none of which merit discussion or relief.

**FACTS**

Appellant met Marine Private First Class (PFC) EW[1] on the morning of 31 May 2013 while both were at physical therapy at Tripler Army Medical Center (TAMC). They talked, got to know each other, and eventually PFC EW gave appellant her phone number. During their initial conversation at TAMC, PFC EW told appellant that she was nineteen years old and that she was in physical therapy for an injury she received during basic training. Private First Class EW learned that appellant had been in the Army for sixteen years.

Appellant contacted PFC EW via text message that same day, and they made plans to go to dinner and a movie that night. Because PFC EW's injury prevented her from driving, appellant picked her up at her barracks at Marine Corps Base Hawaii. Private First Class EW's injury prevented her from walking and necessitated the use of a wheelchair. Appellant and PFC EW went to dinner at Cheesecake Factory, which PFC EW described at appellant's court-martial as an "expensive" restaurant. According to PFC EW, appellant tried to hold her hand during dinner and later he kissed her on the forehead. After dinner, they unsuccessfully tried to see a movie and ended up going on a motorcycle ride instead. At the end of the evening, appellant asked PFC EW if she wanted to stay at his apartment or have him take her home. Private First Class EW testified that she felt "obligated" to stay at his apartment because he bought her an "expensive" dinner.

Once inside appellant's apartment, PFC EW took a morphine pill and fell asleep on his couch while they were watching television. She woke up to appellant touching her chest and stomach. She testified that her shirt and bra were pushed away and she, while pretending to be asleep, heard appellant taking pictures of her chest and saw camera flashes. At trial, the government alleged that appellant took additional photographs of PFC EW's nipple later on in the evening, pictures she was not aware of until shortly before the trial began. In addition, without PFC EW's consent, appellant sent a nude photo of PFC EW that she had taken herself to another soldier.

Private First Class EW eventually reported that appellant had sexually assaulted her and the U.S. Army Criminal Investigation Command (CID) opened an investigation. Appellant, during an interview with CID Special Agent (SA) JM,

---

[1] The Marine Corps promoted her to Lance Corporal by the time of trial.

initially denied, and then later admitted, taking pictures of PFC EW.[2] Based on these statements, the government charged appellant with making a false official statement. The government's proof of this specification consisted mainly of the testimony of SA JM. On direct examination, SA JM testified that during his first interview, he specifically asked appellant whether he had taken any pictures of PFC EW, and SA JM testified appellant denied his accusation. On cross-examination, however, SA JM admitted that his question to appellant was "did you take any *nude* pictures of PFC [EW]?" (emphasis added). Special Agent JM further admitted that he did not ask appellant if he had taken any *topless* pictures of PFC EW.

During his closing argument, trial defense counsel argued that "nude" is not the same thing as "topless," and when appellant denied taking any "nude" pictures of PFC EW, he was telling the truth. The pictures he took were "topless," but not "nude," and therefore he could not be convicted of making a false official statement.

The Specification of Charge V alleged appellant made a false official statement as follows:

> In that [appellant] did, on or near the island of Oahu, on or about 2 June 2013, with intent to deceive, make to [SA JM], an official statement, to wit: "I didn't take any pictures of [PFC EW] *nude*," or words to that effect, which statement was false in that [appellant] did take photographs of [PFC EW's] *bare breast*,[3] and was then known by the [appellant] to be so false. (emphasis added).

The military judge instructed the panel on this specification, without defense objection, as follows:

> To find the accused guilty of this offense, you must be convinced by legal and competent evidence beyond reasonable doubt: [o]ne, that at or near the island of Oahu on or about 2 June 2013, the accused made to [SA JM] a certain official statement, that is: "I didn't take photographs of [PFC EW's] *bare breast*" or words to that effect; [t]wo, that such statement was false in that the accused did take

---

[2] Law enforcement agents found several of these pictures on appellant's phone, some of which were admitted by the government as exhibits at trial.

[3] The promulgating order is incorrect for this specification. It has "nude" instead of "bare breast" at the indicated location. We order this correction to the promulgating order.

photographs of [PFC EW's] *bare breasts.* (emphasis added).[4]

On appeal, appellant claims the military judge failed to properly instruct the panel on this specification, and the evidence was factually insufficient to convict appellant of making a false official statement. We find that the military judge committed plain error in his instructions and, that under the unique circumstances of this case, this error materially prejudiced appellant's substantial rights.

## LAW AND ANALYSIS

### A. The Specification of Charge V, False Official Statement

We review de novo the question of whether the members were properly instructed. *United States v. Payne,* 73 M.J. 19, 22 (C.A.A.F. 2014). However, when the defense fails to object to an instruction at trial, we review for plain error. *Id.* at 23; *United States v. Davis,* 75 M.J. 537, 543 (Army Ct. Crim. App. 2015); *see also* Rule for Courts Martial [hereinafter R.C.M.] 920(f). "Under a plain error analysis, the accused 'has the burden of demonstrating that: (1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of the accused.'" *Payne,* 73 M.J. at 23-24 (quoting *United States v. Tunstall*, 72 M.J. 191, 193-94 (C.A.A.F. 2013)). The government bears the burden of determining what offenses to charge an accused. *United States v. Morton*, 69 M.J. 12 (C.A.A.F. 2009).

Here, the military judge impermissibly substituted the wrong language from the charge sheet in his instructions concerning the Specification of Charge V. Although the specification alleged appellant made an official statement by saying "I didn't take any pictures of [PFC EW] *nude,*" the military judge instructed the panel that his official statement was "I didn't take photographs of [PFC EW's] *bare breast.*" (emphasis added). We find that this change in wording by the military judge is error and it is plain or obvious. We further find that this plain error prejudiced appellant's substantial rights for two reasons. First, there was no evidence that appellant ever told SA JM that he did not take photographs of PFC EW's bare breast. To the contrary, SA JM testified that he never asked about topless photographs. Thus, based solely on this instruction, the panel could not have convicted appellant of denying taking a picture of PFC EW's bare breast because there was no evidence appellant ever made such a statement.

More importantly, given defense counsel's argument and defense to this specification and charge, this instruction changed the nature of the charge in a way that made it easier for the panel to find appellant guilty. Appellant did not provide a

---

[4] We also note the military judge erred by referring to "breasts" rather than "breast" as charged in the Specification of Charge V.

written statement to CID, and the record contains no evidence that SA JM's interview of appellant was videotaped. Thus, we must rely on SA JM's testimony as to the exact language of his questions regarding the photographs. Special Agent JM initially testified on direct examination that appellant denied taking any pictures of PFC EW. If this testimony were undisputed, appellant's guilt would be clear because the government offered eight photographs of PFC EW that appellant later admitted he took without her consent. However, on cross-examination, it became clear that SA JM asked appellant if he took any *nude* pictures of PFC EW. Arguably, appellant could have heard that question and answered in the negative thinking that the pictures he took were not nude, but just of her bare breast. Whether this hypothetical was actually the case and appellant truly lacked the intent to deceive when making his statement, or whether appellant answered in the negative intending to deceive SA JM into believing that he did not take *any* pictures of PFC EW (nude or otherwise), was a question for the panel to decide based on the evidence presented.

Had the military judge given the instruction the way the charge was worded, using the word "nude," the panel would have had to discuss what appellant's intent was in denying taking "nude" photographs. Instead, by changing "nude" to "bare breasts," the military judge made this decision much easier on the panel. All the panel had to do was determine that appellant specifically denied taking photographs of PFC EW's bare breasts and that he did, in fact, take photographs of her bare breasts.[5] Since the panel had the actual photographs taken by the appellant of PFC EW's breasts in evidence, they found, relying on the erroneous instruction, that appellant had made a false statement. Accordingly, because the military judge's erroneous instruction on the elements of false official statement materially prejudiced appellant's substantial rights, we will set this charge and its specification aside in our decretal paragraph.

*B. The Specification of Charge III, Violation of a Lawful General Regulation*

In accordance with Article 66(c), UCMJ, we review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 324-35 (C.M.A. 1987); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we] are [ourselves] convinced of the accused's guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325.

---

[5] *See supra* note 4.

Appellant's misconduct described above resulted in a charge of violating a lawful general regulation, specifically Army Reg. 600-20, Personnel – General: Army Command Policy [hereinafter AR 600-20], para. 4-14.b. (18 Mar. 2008), by "wrongfully having an inappropriate relationship with [PFC EW] which was, or was perceived to be, coercive in nature and created an adverse or clearly predictable adverse impact on discipline."

Army Regulation 600-20, para. 4-14.b. prohibits relationships between soldiers of different ranks if they:

> (1) Compromise, or appear to compromise, the integrity of supervisory authority or the chain of command.
>
> (2) Cause actual or perceived partiality or unfairness.
>
> (3) Involve, or appear to involve, the improper use of rank or position for personal gain.
>
> (4) Are, or are perceived to be, exploitative or coercive in nature.
>
> (5) Create an actual or clearly predictable adverse impact on discipline, authority, morale, or the ability of the command to accomplish its mission.

Having completed our review and in consideration of the entire record, we find that appellant's conviction for violating a lawful general regulation is not legally or factually sufficient. Specifically, we find that the government failed to prove beyond a reasonable doubt that the "relationship" between appellant and PFC EW was, or was perceived to be, coercive in nature, or that it created an adverse or clearly predictable adverse impact on discipline.

Appellant and PFC EW were in two different armed services, were not in the same unit, did not work or live on the same installations, and did not have any kind of supervisor-subordinate relationship. We recognize that the regulation does not require that both parties to a relationship be in the same unit or even the same service to be prohibited. However, under the facts of this case, appellant and PFC EW had no professional relationship whatsoever, which essentially eliminates the possibility that their relationship could be coercive based upon their different ranks.

We have no doubt that appellant knew PFC EW was a lower enlisted Marine who had recently completed basic training. Similarly, we have no doubt that PFC EW knew appellant was a senior enlisted soldier, given that she knew he had been in the Army for sixteen years. However, the government presented no evidence this difference in rank had any impact on the events of the evening. Private First Class

EW testified that during their initial meeting, she found appellant to be caring and reliable. She felt comfortable around him because he showed her pictures on his phone of children he cared for and because he was "knowledgeable" about his job in the Army. She willingly gave appellant her phone number because he "seemed like a very innocent sweet guy" to whom she was attracted. The government simply presented no evidence that PFC EW felt coerced by appellant's rank or position in the Army to give him her phone number or to go out to dinner with him.

On appeal, the government places great emphasis on the fact that PFC EW felt 'coerced' to stay at appellant's apartment with him at the end of the evening. However her testimony indicated any apparent "coercion" came from the fact that appellant bought her an "expensive" dinner, tried to take her to a movie, and took her on a motorcycle ride—not the fact that he was a senior enlisted soldier in the Army.

Likewise, the government failed to prove beyond a reasonable doubt that this "relationship" had any adverse or clearly predictable adverse impact on discipline. The fact that PFC EW was "disgusted" and felt "violated" by appellant's actions establishes that these actions were nonconsensual and thus cannot form a basis for establishing a consensual "inappropriate relationship" between the two. *See United States v. Delgado*, ARMY 20140927, 2016 CCA LEXIS 7 at *6-7 (Army Ct. Crim App. 6 Jan. 2016) (mem. op.). In addition, while the fact that appellant sent a naked photo of a lower enlisted Marine to another soldier may well have a clearly predictable adverse impact on discipline, it has nothing to do with any "relationship" between appellant and PFC EW. It was a unilateral action taken by appellant without the consent or knowledge of PFC EW. Thus, appellant's conduct cannot form a basis to establish an "inappropriate relationship" prohibited by AR 600-20.

Accordingly, appellant's conduct is legally and factually insufficient to establish an inappropriate relationship under AR 600-20, para 4-14.b.

**CONCLUSION**

Upon consideration of the entire record, the findings of guilty of the Specification of Charge III and Charge III and the Specification of Charge V and Charge V are set aside and DISMISSED. The remaining findings of guilty are AFFIRMED.

Applying the principles of *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986) and the factors set forth in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013), we conclude that we can confidently reassess appellant's sentence without returning this case for a sentence rehearing.

In evaluating the *Winckelmann* factors, our decision does not result in a *dramatic* change in the penalty landscape despite the fact that appellant's maximum

exposure to confinement is reduced by seven years. *Id*. at 15-16. Appellant faced a maximum sentence to confinement for 31 years, yet the panel sentenced him to only one year. Even with the maximum confinement reduction as the result of our setting aside and dismissing two charges and their specifications, his sentence to confinement is still far below the maximum exposure. In addition, this court reviews the records of a substantial number of courts-martial involving sexual assault and we have extensive experience with the level of sentences imposed for offenses similar to those committed by appellant. *Id*. at 16.

Finally, the remaining offenses still capture the gravamen of appellant's criminal conduct. *Id*. Appellant remains convicted of viewing and photographing PFC EW's nipple, touching her breast, and sending a private photo of her to another soldier, all without the consent of PFC EW. These actions are the crux of the case, and based on the entire record and appellant's course of conduct we can conclude the officer panel would have imposed a sentence of at least that which was adjudged. Accordingly, we AFFIRM the sentence as adjudged. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by this decision, are ordered restored.

Judge HERRING and Judge BURTON concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court